HEARD APRIL TERM, 1876.

## FRASER & DILL *vs.* CHARLESTON.

In an action against the City Council of Charleston by creditors of J. W., deceased, to recover from it the value of certain city stock standing on the transfer stock book of the City Treasurer in the name of J. W. at the time of his death, which the plaintiffs alleged had been illegally transferred to others after his death, the transfer stock book of the City Treasurer is not competent evidence in behalf of the defendant to show that the transfer had been made by the authority of J. W., given before his death by endorsements on the original certificates, it appearing from the testimony that the original certificates from which the entries in the book were made were in the possession of the defendant.

The statement of the executor of J. W. on the inventory of the estate that the certificates of the stock held by J. W. were hypothecated in his lifetime and since his death were transferred by the parties holding them: *Held* not to be competent evidence for the defendant.

The books of a municipal corporation are competent evidence on behalf of the corporation itself to prove its laws and ordinances of a public nature, which by its charter it is authorized to make, but entries in its books of a private nature are not competent.

Where in " a case of chancery " the solicitor for the defendant omitted to offer certain material written testimony under the mistaken notion that it was not necessary under the state of the pleadings to produce it, the Supreme Court, on a petition filed during the argument, remanded the case to the Circuit Court to give the defendant an opportunity to offer the testimony.

BEFORE REED, J., AT CHARLESTON, JUNE, 1875.

This was an action in the nature of a creditors bill by Fraser & Dill and Mary F. Davis against William Whaley as executor of Joseph Whaley, deceased, the City Council of Charleston and others.

The complaint alleged that the plaintiffs were creditors of Joseph Whaley, deceased, and that since his death they had recovered judgments against his executor, and one of the objects of the bill was to subject certain stock of the city of Charleston which it was claimed belonged to the said Joseph Whaley at the time of his death to the payment of his debts.

By an order, dated September 12, 1874, G. W. Dingle, Esq., was appointed Special Referee in the cause to inquire and report upon the facts, with leave to report any special matter.

On April 13th, 1875, the Referee submitted his report as follows:

Pursuant to an order of Court made in this case and filed on the 12th day of September, A. D. 1874, whereby it was referred to me as Special Referee to report upon the facts, with leave to report any special matter, I respectfully report:·

That, having been attended by the attorneys and counsel for plaintiffs and defendants, I proceeded to the examination of the matter referred.

I find that Joseph Whaley departed this life on the 26th day of January, A. D. 1872, having first made and duly executed his last will and testament, bearing date the 4th day of February, A. D. 1869, wherein he appointed his daughter, Maria Evans Morris, of the State of New York, executrix, and his grand-nephew, William James Whaley, and his son, William Whaley, executors.

That said will was duly admitted to probate on the 12th day of February, A. D. 1872, and on the 13th day of February, A. D. 1872, the said William Whaley qualified thereon as executor. That subsequent, to wit, on the        day of        , A. D. 1874, the said William James Whaley also qualified as executor under the said will, and by an order of this Court of 13th August, A. D. 1874, was made a party to these proceedings, with leave to plead, answer or demur in twenty days.

That the said William Whaley, having qualified as executor, took possession of the real and personal estate of the testator, and filed an inventory of the estate on the 16th May, A. D. 1874.

ASSETS OF ESTATE OF JOSEPH WHALEY.

*Real Estate.*

I find that the real estate of the testator consists of a large and valuable plantation or tract of land on Edisto Island and a house and lot on Edingsville. Since the death of the testator this plantation has been planted and managed by the executor, William Whaley.

*Personal Estate.*

1. Bond of William Whaley to Joseph Whaley, with mortgage of house and lot corner of Broad and Orange streets.

This bond bears date 1st May, A. D. 1866, is conditioned for the payment of $25,000, and is secured by a mortgage of the lot of land and the buildings Southwest corner of Orange and Broad streets, city of Charleston. The mortgage bears date the 20th March, A. D. 1868, and was recorded in the office of the Register of Mesne Conveyance on 7th April, 1868, in Book G, No. 15, page 305. Mrs. Rachel L. Whaley, wife of William Whaley, renounced dower on 22d May, 1871, which renunciation is also recorded.

The mortgage recites the satisfaction by Joseph Whaley, for the convenience of William Whaley, of a prior mortgage of the same premises from William Whaley to him.

This bond and mortgage are in the possession of C. C. Puffer, Esq , Receiver of the assets of the Bank of the State, and was produced by him at the reference in response to a subpœna *duces tecum.* The present Receiver of the Bank of the State assets claims to hold the said bond and mortgage as a security for a loan made by a former Receiver to Mr. William Whaley. They are endorsed in blank in the name of Joseph Whaley, in the presence of N. H. Porter. As the Receiver of the bank is not a party to these proceedings, the issue made in the complaint as to the bond and mortgage, viz.: that the hypothecation of the same be adjudged void as against the creditors of the estate of Joseph Whaley, and be declared a valid lien upon said premises for the benefit of said creditors, could not be further investigated.

*City Stock.*

I find that the City Treasurer issued to Mr. Joseph Whaley, in his name, certificates of city stock at the dates and for amounts as below specified :

On 12th July, 1852, certificate No. 7, of the issue of June, 1852, for.... ............................................................. $ 23,000
This certificate was renewed January 16, 1866.
On the 11th February, 1857, certificate No. 113, of the issue of March, 1856, for............................................... 64,122
And on the 14th February, 1866, certificate No. 12, of the issue of 1866, for past due interest, for.................. 5,220

Making in all......................................... $ 92,342

On the 11th July, 1871, the certificate No. 113, for $64,122, was divided into the following certificates, issued in the name of Joseph Whaley :

Certificate No. 381, for.............................. $ 34,122
Certificate No. 382, for......... ...................... 5,220
Certificate No. 383, for............................... 4,780
Certificate No. 384, for............................. . 4,000
Certificate No. 385, for........................ ...... .. 6,000
Certificate No. 386, for................... ............. 5,000
Certificate No. 387, for.......... ..................... 5,000--$64,122

The certificate No. 381, for $34,122, was further divided into the following certificates, issued in the name of Joseph Whaley :

Certificate No. 393, for...................................... $ 10,000
Certificate No. 394, for..................... ...........   10,000
Certificate No. 395, for................................   8,000
Certificate No. 396, for.................................   6,122—$34,122

It is alleged by the City Council, and so appears on the transfer book of the City Treasurer, that on the 13th September, 1871, shortly prior to the death of Mr. Joseph Whaley, $6,000 of the above stock, certificate No. 385, had been transferred. Deducting this amount, I find that at the time of the death of Mr. Joseph Whaley, 26th January, 1872, there stood in his name on the books of the City Treasurer city stock to the amount of $86,342, par value.

Mr. Corbin, on behalf of the City Council, defendant, admitting this amount of city stock in the name of Joseph Whaley at the time of his death, offered in evidence the transfer stock book of the City Treasurer to show to whom this stock had been transferred.

The books so offered in evidence is a record of transfers of stock; it is required by ordinance of the city, and is kept as required by ordinance. It shows the date and issue of certificates of stock to be transferred, the name of the owner of the stock, the number of the certificates, and the amount it represents, to whom transferred, the number of the new certificate to be issued, and the amount of such certificate. The entries are made from the certificates; the certificate transferred is endorsed as transferred to another number and canceled, and the endorsement is signed by the Mayor of the city and the City Treasurer. The canceled certificate is then filed away and carefully preserved.

The plaintiffs objected to the proof of the transfer of stock by the transfer book, or in any other way than by the production of the original certificate thereof—

1. Because the transfer book is not the primary and best evidence of the transfer; and

2. Because the transfer must be proved by the original certificate, endorsed and delivered, as required by city ordinance, the production of the original certificate being necessary to show the genuineness and validity of such transfer.

I sustained the plaintiffs' objection to the introduction of this evidence to prove the transfers of the stock—my ruling being excepted to by Mr. Corbin—and I find, accordingly, that no transfer of the city stock, amounting to $86,342, par value, standing in the name of Joseph Whaley at the time of his death, nor any

authority to make transfers of said stock, has been proved; and that said stock is a portion of the assets of the estate of the said Joseph Whaley, and to be administered as such; that said stock is represented by certificates numbered 7, 12, 382, 383, 384, 386, 387, 393, 394, 395 and 396, of the amounts and descriptions as above set forth.

*Judgments Against William Whaley, Executor of Joseph Whaley.*

From an examination of the records from the office of the Clerk of the Court of Common Pleas for Charleston County, I find that the following judgments have been entered up against William Whaley, executor of Joseph Whaley, at the dates and for the amounts and on the causes of action as below specified:

1. Judgment in favor of George E. Gibbon, dated 15th November, 1873, on note of William Whaley, endorsed by Joseph Whaley, for.............................$ 1,210 25
This judgment was made a lien on 24th February, 1874.

2. Judgment in favor of Richard Lathers, dated 2d January, 1874, on joint and several bond of William . Whaley and Joseph Whaley, in the penalty of......... 24,000 00

3. Judgment in favor of George W. Williams & Co., dated 24th February, 1874, on note of William Whaley, endorsed by Joseph Whaley, for................ 710 00

4. Judgment in favor of R. K. Scott, dated 30th May, 1874, on transcript of judgment, for...................... 5,373 01

5. Judgment in favor of J. E. Burke, dated 8th June, 1874, on note of William Whaley, endorsed by Joseph Whaley, for............................................ 662 66

6. Judgment in favor of T. Grange Simons, dated 8th June, 1874, on note of William Whaley, endorsed by Joseph Whaley, for............................................ 370 75

7. Judgment in favor of Fraser & Dill, dated 8th June, 1874, on note of William Whaley, endorsed by Joseph Whaley, for...................... .......................... 2,069 76

8. Judgment in favor of Mary F. Davie, dated 8th June, 1874, on note of William Whaley, endorsed by Joseph Whaley, for............................................ 1,400 83

9. Verdict recovered in the Court of Common Pleas, March Term, in the case of Edward H. Gadsden and Rebecca H. Gadsden, his wife, against William Whaley, executor of Joseph Whaley, for...................... 15,129 00

*Claims Against the Estate of Joseph Whaley.*

By an order of this Court of the 12th August, 1874, it is provided that all claims against the estate of Joseph Whaley proved under the previous order of the Court calling in creditors in the case of the People's Bank against William Whaley, executor of Joseph Whaley, be considered as proved and established in this case.

I respectfully report that the following statement of claims has been furnished me by Jacob Williman, Esquire, Clerk of the Court, as proved before him in the first mentioned case:

| | |
|---|---:|
| M. L. Wilkins, note January 9th, 1872...................... | $ 600 00 |
| M. L. Wilkins, note December 11th, 1871................... | 700 00 |
| Charles T. Mitchell, note December 18th, 1871............ | 4,290 00 |
| Charles T. Mitchell, note January 12th, 1872.............. | 2,135 00 |
| Theodore D. Jervey, note June 1st, 1874.................. | 2,387 00 |
| Theodore D. Jervey, note November 10th, 1871........... | 1,300 00 |
| J. Drayton Ford, note January 13th, 1872........ ........ | 1,901 33 |
| R. W. Disher, note December 1st. 1871........ ... ........ | 450 00 |
| Fanny Williams, note January 5th, 1872........... ...... | 1,900 00 |
| George A. Trenholm, note November 7th, 1871........... | 1,700 00 |
| Jacob Steiber, note December 22d, 1871....:.............. | 1,200 00 |
| Jacob Steiber, note January 1st, 1872........................ | 1,000 00 |
| William Ravenel, balance account........................... | 610 52 |
| William Ravenel, balance account.......................... | 14,735 38 |
| G. L. Buist, note.................................................. | 1,000 00 |
| People's Bank, bond January 31st, 1871.................... | 2,500 00 |
| People's Bank, note January 3d, 1872...................... | 750 00 |
| People's Bank, note January 4th, 1872..................... | 2,200 00 |
| People's Bank, note January 24th, 1872............... ..... | 650 00 |
| A. Simonds, for National Bank, note January 10th, 1872........................................................... | 5,000 00 |

On behalf of the City Council, I am requested to report when Joseph Whaley became a holder of the city stock, and of what issue, as shown by the books of the Treasurer, and what disposition appears to have been made of said stock, as shown by the books of the City Treasurer, and when such disposition was made.

I have above reported the amount and the issue of city stock issued to Joseph Whaley and the date of the receipt of said stock·

From the books of the City Treasurer, it appears, as above stated, that on the 13th September, 1871, prior to the death of Mr. Joseph Whaley,

Certificate No. 385 for. ..................................... ..$ 6,000 00

was transferred to South Carolina Loan and Trust Company.

Certificate No. 396 for........ ......................... 6,122 00

was transferred on the 13th February, 1872, to H. G. Loper, Cashier of the People's National Bank.

Certificate No. 7 for............................................ 23,000 00

Certificate No. 395 for. ...................................... 8,000 00

Certificate No. 12 for............................................ 5,220 00

were transferred on the 19th February, 1872, to H. G. Loper, Cashier of the People's National Bank.

Certificate No. 394 for...................................... 10,000 00

was transferred to D. Ravenel, Cashier of the Citizens' Savings Bank, on 19th February, 1872.

Certificate No. 383 for......................................... 4,780 00

was transferred on the 28th February, 1872, to M. Triest.

Certificate No. 382 for........................................... 5,220 00

Certificate No. 384 for...................................... 4,000 00

were transferred on the 23d April, 1872, to the Commissioners of the General Sinking Fund of the city of Charleston, and

Certificate No. 386 for.................. ........ ............... 5,000 00

Certificate No. 387 for........................................ 5,000 00

Certificate No. 393 for...................... ...................... 10,000 00

were transferred to the said Commissioners of the General Sinking Fund of the city of Charleston on the 18th July, 1872.

I am further requested to report in whose name the said city stock now stands, as appears from the books of the City Treasurer; and as to so much of the stock as has been purchased for the General Sinking Fund, I am requested to report from whom it was purchased, when purchased, and for what price purchased.

I respectfully report:

That it appears from the books of the City Treasurer that the said city stock, formerly in the name of Joseph Whaley, ($92,342,) now stands on said books in the following names:

Commissioners of General Sinking Fund of the city of
  Charleston ...... ......................................................$82,542 00
This includes certificate No. 385, for $6,000, transferred
  before the death of Mr. Whaley.

| | |
|---|---:|
| Robert Hunter................................................. | 1,000 00 |
| C. F. Hencken................................................. | 1,000 00 |
| W. G. Bennett................................................. | 820 00 |
| William Stone................................................. | 500 00 |
| W. G. DeSaussure, trustee................................. | 4,580 00 |
| D. Paul, trustee............................................. | 200 00 |
| F. Campbell................................................... | 1,000 00 |
| S. L. Coffin.................................................. | 700 00 |

                                            $92,342 00

From the account sales of city stock purchased for the Commissioners of the General Sinking Fund, submitted in evidence, and the testimony of the City Treasurer, it appears that on the 23d April, 1872, P. J. Coogan, City Treasurer, purchased of James H. Wilson, broker, $9,220 city stock, in the name of Joseph Whaley, at 51c......... .............................. ..........................$ 4,702 20
On the same day Mr. Coogan purchased from the same
  broker $6,122 city stock, in the name of H. G. Loper,
  Cashier People's National Bank, at 51c.................. 3,122 20
On the 23d May, 1872, Mr. Coogan purchased from the
  same broker $14,000 city stock, in the name of H. G.
  Loper, Cashier, due in 1866, at 51c....................... 7,140 00
And $23,000 city stock, due in 1877, in the name of
  H. G. Loper, Cashier, at 55c............................... 12,650 00
On the 18th July, 1872, F. J. Pelzer, Esq., purchased
  for the same account from J. Fraser Mathewes $20,000
  city stock, in the name of Joseph Whaley, at 53½c... 10,700 00
Making in all $72,342 city stock, for which was paid the sum of $38,314.

I am further requested by the attorney of the City Council to report that as to the transfer of said stock after the death of Joseph Whaley, that it was done in good faith by the City Treasurer at the time the stock was presented, and without knowledge on the part of the Treasurer of the death of Joseph Whaley.

I respectfully report that as to the notoriety of the death of Colonel Joseph Whaley, the evidence submitted by plaintiffs established the following facts:

That on the 27th January, 1872, the invitation to the funeral of Colonel Joseph Whaley appeared in the News and Courier, a daily paper of the city of Charleston, together with an editorial notice of his death.

That his death was duly reported to the Registrar of the city, with certificate of the attending physician, and duly registered on the mortuary records of the Board of Health—a department of the city government—as required by city ordinance.

In the News and Courier of the 19th February, 1872, appeared the notice of William Whaley, qualified executor, calling upon all persons having demands against the estate of the late Colonel Joseph Whaley to present them, properly attested. Mr. Stephen Thomas, who was City Treasurer at the time of the death of Mr. Whaley, knew of his death, as also Mr. William L. Campbell, Clerk in the City Treasurer's office.

Mr. Coogan took possession of the office of City Treasurer, to which he had been elected, in March, 1872. On the 2d April, 1872, the interest on $29,220, city stock, in the name of Joseph Whaley, was drawn by William Whaley, as executor, and on the 2d July, 1872, interest on $20,000, city stock, in the name of Joseph Whaley, was drawn by Andrew Simonds, Esq., per order of William Whaley, as executor.

I had before me no evidence of bad faith on the part of either of the City Treasurers above mentioned, but I find, as a conclusion of fact, that the death of Colonel Joseph Whaley was sufficiently advertised to affect the City Council with notice thereof.

### Claim Against the Bank of Charleston.

I find that William Whaley, executor of Joseph Whaley, recovered judgment against the Bank of Charleston National Banking Association amounting to...........$34,833 80

On the 10th May, 1874, Mr. J. B. Campbell, attorney for the executor, received from the bank, on account of this judgment.......................................... 5,000 00

And on the 22d May, 1874, the balance due on the judgment was paid over, under the execution, to C. C. Bowen, Esq., Sheriff of Charleston County, said balance amounting to..........................................$29,833 80

The amount in the hands of the Sheriff ($29,833.80) was appropriated as follows:

Mr. D. H. Chamberlain, of counsel for plaintiff, was paid by order of the executor......$ 4,500 00

Messrs. Simonton & Barker, attorneys for Richard S. Lathers, on account of his judgment.......................................... 9,247 00

Mr. James B. Campbell, attorney for the executor, on account of his compensation, under agreement between him and the executor...................... ...................................... 13,266 80

Mr. J. B. Campbell, for costs..................... 275 00

W. J. Gayer, for costs............................ 100 00

Sheriff's commissions and costs.................. 345 07

Clerk of Court costs.............................. 100 00

———— 27,833 87

Leaving in the hands of the Sheriff a balance of. ........ $1,999 93

Two of the judgment creditors, George E. Gibbon and George W. Williams & Co., having given notice to the bank not to pay the fund, this balance is held by the Sheriff, to abide the decision of the Court as to the right of said judgment creditors to be paid out of said funds.

I find that William Whaley, the executor, is insolvent.

I file herewith a copy of the testimony taken in the case.

The City Council of Charleston excepted to the report on the following grounds:

1. Because the said Referee refused to admit the transfer book of city stock kept by the City Treasurer of the city of Charleston as evidence to prove the fact of the transfer of stock which had stood in the name of Joseph Whaley on said books; whereas the said Special Referee should have admitted said books in evidence to prove the *fact* of transfer of said stock. That transfers of said stock were made appears by the report of said Special Referee, wherein he states what disposition has been made of said stock.

2. Because the Special Referee erred in finding that no transfer of city stock, amounting to $86,342, par value, standing in the name of Joseph Whaley at the time of his death, and that no authority to make such transfer, had been proved, and that said city stock is a portion of the assets of the estate of the said Joseph Whaley, and to be administered as such, and that said stock is represented by certificates numbered 7, 12, 382, 383, 384, 386, 387, 393, 394, 395 and 396, of the amount and description set forth in his said report; whereas the said Special Referee should have found and reported that, as a matter of fact, said stock, amounting in par value to $86,342, had been transferred as follows:

Certificate No. 396, for.........................................................$ 6,122 00
was transferred February 13, 1872, to H. G. Loper,
    Cashier of the People's National Bank.
Certificate No. 7, for...................................................... 23,000 00
Certificate No. 395, for......... ...................................... 8,000 00
Certificate No. 12, for...................................................... 5,220 00
were transferred on the 19th February, 1872, to H. G.
    Loper, Cashier People's National Bank.
Certificate No. 394, for...................................................... 10,000 00
was transferred to D. Ravenel, Cashier of the Citizens'
    Savings Bank, February 19, 1872.
Certificate No. 383, for...................................................... 4,780 00
was transferred on 28th February, 1872, to M. Triest.
Certificate No. 382, for ...................................................... 5,220 00
Certificate No. 384, for......... ...................................... 4,000 00
were transferred 23d April, 1872, to the Commissioners of
    the General Sinking Fund of the city of Charleston, and
Certificate No. 386, for...................................................... 5,000 00
Certificate No. 387, for...................................................... 5,000 00
Certificate No. 393, for...................................................... 10,000 00
were transferred to the said Commissioners of the General
    Sinking Fund of the city of Charleston, July 18, 1872.

The said Special Referee should also have found and reported, as a matter of fact, that the stock formerly owned by said Joseph Whaley, and numbered as aforesaid, and amounting at the time of his death to $86,342, was, at the date of his said report, held by the following named persons:

| | |
|---|---:|
| Commissioners General Sinking Fund city of Charleston | $76,542 00 |
| Robert Hunter | 1,000 00 |
| C. F. Hencken. | 1,000 00 |
| W. G. Bennett | 820 00 |
| William Stone | 500 00 |
| W. G. DeSaussure, trustee | 4,580 00 |
| D. Paul, trustee | 200 00 |
| F. Campbell | 1,000 00 |
| S. L. Coffin | 700 00 |
| | $86,342 00 |

That for $72,342 of the stock purchased by the Commissioners of the General Sinking Fund of the said City Council of Charleston the defendant paid the sum of $38,314.

3. Because said Special Referee should have found and reported that said city stock, amounting to $86,342, is not a portion of the assets of the estate of said Joseph Whaley, deceased.

4. Because the said Referee erred in not finding and reporting, as a matter of fact, that said $86,342 of city stock had been hypothecated by said Joseph Whaley in his lifetime, as alleged in the plaintiffs' complaint, and not denied by defendants, or either of them.

5. Because the said Referee erred in finding, as a matter of law, that the City Council of Charleston had not the authority to transfer the said city stock which had stood in the name of Joseph Whaley, and which he had hypothecated, during his lifetime, to the holders and pledgees thereof.

The decree of the Court is as follows:

REED, J. On hearing the report of the Referee in this cause, and the exceptions of the defendants, the City Council of Charleston, thereto, and upon argument of counsel:

1. It is ordered and decreed that the report of the Referee be confirmed and the exceptions of the said defendant, the City Council of Charleston, be overruled.

2. It is ordered and decreed that G. W. Dingle, Esq., be appointed a Receiver to take possession of all the property of the estate of the late Joseph Whaley, and of all the profits and proceeds thereof, and to administer the same under the orders of this Court, in the place and stead of the executors of the said Joseph Whaley,—the said G. W. Dingle first giving security before the Clerk of this Court, in the sum of $10,000, duly and fully to account for and to pay what he shall receive as this Court shall direct.

3. That upon the said G. W. Dingle giving the said security for the faithful performance of his duties, the said William Whaley and William James Whaley shall account for and pay over to the said G. W. Dingle, hereby appointed Receiver, all moneys in their hands, and turn over to him all property whatsoever of the said estate that may have come into their hands and possession, and account for all moneys and assets of the estate which they may have received and expended as such executors.

4. It is further ordered and decreed that upon giving the said security hereinbefore required the said G. W. Dingle, Receiver, shall take possession of the plantation or tract of land on Edisto Island and the house and lot in Edingsville, and shall take such steps as may be necessary to the preservation and gathering in of any crop or crops that may have been planted on the said plantation. And all persons who are in possession of the said plantation claiming title thereto under or by the said William Whaley and William James Whaley, executors of the said Joseph Whaley, are hereby ordered to deliver possession thereof to the said Receiver; and any and all persons who may be in possession as tenants under the same are hereby ordered to attorn to and pay their rents in arrear, and the growing rents, when due, to the said Receiver. And it is further ordered that upon the written request, or with the assent in writing of a majority of the creditors of the said Joseph Whaley who have proved and established their claims as reported by the Referee in this case, that the said G. W. Dingle, Referee, do have leave and authority to sell the said plantation and lot upon the usual terms and usual notice; and in case of such sale, he is hereby ordered and directed to hold the proceeds thereof subject to the further order of the Court.

5. It is further ordered and decreed that upon giving the said security the said G. W. Dingle do proceed to set up the mortgage given by William Whaley to Joseph Whaley of the lot No. 99 Broad street, mentioned in the report of the Referee, and do take legal proceedings to foreclose the same.

6. It is further ordered and decreed that so much of the city stock found by the Referee to have stood in the name of Joseph Whaley at the time of his death, and since transferred by the said City Council of Charleston to the Commissioners of the General Sinking Fund of the city of Charleston, be adjudged and decreed to belong to the estate of the said Joseph Whaley and subject to the payment of his debts, and that the said City Council of Charleston be adjudged and decreed to cancel or cause to be canceled the certificate of such stock so standing in the name of Joseph Whaley at the time of his death and since transferred to the said Sinking Fund; and that the said Council cause new certificates therefor to be made out in the name of G. W. Dingle, Receiver; and that the said G. W. Dingle, Receiver, do hold the said stock as part of the assets of the estate of the said Joseph Whaley, subject to the further order of this Court.

7. It is further ordered and decreed that the said City Council of Charleston do account with the said Receiver for so much of the said city stock found by the Referee to have stood in the name of Joseph Whaley at the time of his death and since transferred by the said City Council of Charleston to other persons, and do pay the said Receiver the market value of the said stock at the time of the said transfers, with interest thereon from the time of the said transfers to the time of the said payment.

8. It is further ordered and decreed that the said City Council of Charleston do account with the said G. W. Dingle, Receiver, for all dividends or interest due and payable by the said City Council of Charleston upon the said city stock found to have stood in the name of Joseph Whaley at the time of his death, whether the said dividends and interest have been paid to others or not, and do pay over the same to the Receiver.

9. It is further ordered and decreed that the said Receiver do inquire into and report in what order and rank the debts of the said Joseph Whaley reported by the said Referee as proved and established in this cause are to be paid.

10. It is further ordered and decreed that the said Receiver shall be entitled to two and one-half per centum on all moneys received by him, and two and one-half per centum on all moneys paid out by him as commissions.

11. And, lastly, it is ordered and decreed that the said G. W. Dingle, Receiver, do report to this Court on the first day of the next term for all his actings and doings in this cause as such Receiver; and that the parties to the cause do have leave to move in term or at chambers for any further orders in the cause.

The City Council appealed.

*Corbin & Stone,* for appellant.

*McCrady & Son,* and *Miles,* for plaintiffs, contra.

*Buist & Buist, John Phillips, Magrath,* for the executor.

December 12, 1876.　The opinion of the Court was delivered by

MOSES, C. J.　The only question presented by the appeal arises out of the exception of the City Council of Charleston, one of the defendants in the cause, to so much of the Circuit decree as establishes the right to certain city stock in Colonel Joseph Whaley at the time of his death and requires the said Council to account for so much of the same as it has sold and transferred.　The material point, so raised, involves the competency of the evidence offered in support of the defense, upon which the appellant relied in exoneration of the liability charged by the complaint and fixed by the decree.

It is, therefore, necessary, in a brief manner, to look to the issues made by the pleadings between the Council and the respondents, and particularly to the character of the complaint and the relief which it demanded of the former.

It was a complaint in the nature of a creditor's bill, filed by certain creditors of Joseph Whaley who had obtained judgments against William Whaley, his executor, in June 1874, on behalf of themselves and all other creditors of the said testator who shall in due time come in and seek relief by and contribute to the expenses of the action against other of his creditors, and the said executor alleging the death of the said Joseph Whaley on 26th January, 1862, leaving a last will and testament, on which the said William

Whaley qualified as executor on the 13th day of February following, with charges of waste and maladministration by the said executor, who was alleged to be utterly insolvent. It contained the usual prayer of relief common to a proceeding of the like nature. The averments charging a liability on the said City Council and connecting them with the case may be stated as follows:

That no inventory was filed by the executor until the 16th day of May, 1864, more than two years after he qualified. "That in the inventory then filed by him he states that the estate of the said Joseph Whaley consists as follows: 1. Claim against Bank of Charleston, &c. 2. Certain bond, secured by mortgages, &c. 3. City stock standing in the name of the testator, but all of which was hypothecated by him in his lifetime, and since his death transferred by the parties holding it to their own names, $97,000. 4. Realty, plantation, &c."

It further alleges, on paragraph 9, "that the City Council of Charleston claim to have purchased certain portions of the said stock standing in the name of the said Joseph Whaley at the time of his death, and have transferred to and hold the certificates thereof as the property of the said city, and have transferred other portions thereof to other parties. That these plaintiffs claim that all the city stock standing in the name of Joseph Whaley upon the books of the treasury of the city of Charleston at the time of the death of the said Joseph Whaley still belongs to his estate and is liable for his debts and should be administered according to law."

Wherefore the plaintiffs, as against the said Council, demand judgment "that the said city stock standing in the name of the said Joseph Whaley at the time of his death be adjudged to belong to the said estate of the said Joseph Whaley and subject to the payment of the debts of the same, and that proper administration thereof be decreed."

The City Council by their answer say, that from the records in the office of the City Treasury, on the several days stated in the schedule to said answer annexed, there was standing on the records of city stock in the said office a registry of stock in the name of Joseph Whaley amounting in all to $92,342, as will appear by the said schedule. But they aver, on information and belief, that the whole of the said stock was, on the order and by the authority and direction of the said Joseph Whaley, given before his decease, duly transferred, a portion of it to the Commissioners of the General

Sinking Fund of the City Council of Charleston. That during his lifetime he endorsed the several certificates of stock set out in the said schedule, and delivered the same, so endorsed, to sundry persons or corporations as collateral security for loans by them to him made. That such transfer, in conformity with the power given to the holder of such stocks, on the books of the City Treasurer was valid and proper, and that no damage or loss accrued to him, or his estate after his death, thereby for which the said corporation is liable.

And, for a second defense to the action, the Council say that the said testator in his lifetime constituted certain persons and corporations named his attorneys or agents to transfer the stock standing in his name on the books of the Treasurer of said city, as per schedule annexed. That said persons or corporations, as such attorneys or agents, caused the said stock to be transferred, as in said schedule set out, and new certificates were issued therefor; but at the time of making the said transfers and issuing the said certificates the Council did not know of the death of the said Joseph Whaley; that all its actings in the premises were in good faith, and that no liability therefor can attach to it. Wherefore, it demands judgment and costs.

From the notes of the proceeding before the Referee, accompanying his report, it appears beyond all doubt that on 26th January, 1862, there was standing on the books of the City Treasurer stock in the name of the testator to the amount of $86,342. The Referee not only reports this as an established fact, but adds: "The counsel on behalf of the City Council, defendant, admitting this amount of city stock in the name of Joseph Whaley at the time of his death, offered in evidence the transfer stock book of the City Treasurer to show to whom this stock belonged." This book, which is required by an ordinance of the city to be kept, is thus described in the testimony of the Clerk of the City Treasurer, a witness introduced by the defense, and his statement of its character is set forth in the report. "The book shows, in general, the date and issue of certificates of stock to be transferred, the name of the party, owner of the stock, the number of the certificate and the amount of money it represents, to whom transferred, the number of the new certificate to be issued and the amount of the certificate." The Referee adds: "The entries are made from the certificates, the certificates transferred are endorsed as transferred to

another number and canceled, and the endorsement is signed by the Mayor of the city and the City Treasurer. The canceled certificate is then filed away and carefully preserved."

Exception was taken by the respondents to the competency of the book as evidence of the transfer. It was insisted that it could only be made by the production of the original certificate, endorsed and delivered as required by the city ordinance, the production of such certificate being necessary to show the genuineness and validity of the transfer. The exception was sustained and the judgment of the Referee confirmed by the Circuit Court. In this consists the error charged by the appeal and brought here for correction.

It is urged by the appellant that, "*under the pleadings*, it was not for the City Council, in the first instance, to submit proof of authority from Joseph Whaley to make the transfer, and that it was incumbent on the respondents to show that the transfer was void for the want of proof of such authority." This assumes that the respondents are estopped from requiring proof of the *transfer* of the stock by the statement of William Whaley, the executor, in the inventory, "that it was hypothecated by the testator in his lifetime and since his death transferred by the parties holding it in their own names."

The declarations of William Whaley, the executor, cannot bind or conclude the creditors of the estate averring a demand against a debtor to it, much less in a matter in which he had no part as executor and as to assets which the statement implies never came to his hands. Even his evidence in a contest as to the stock would not be competent to show the disposition made of it by his testator, because it is susceptible of proof by testimony of a higher character. Would the executor have been a competent witness in this case, after the fact had been established that at the death of his testator certain stock of the city stood on its books in his name, to prove a transfer of it by his mere statement to that effect?

It is evident from the whole complaint that the respondents did not admit the truth of the statement in the inventory as to the transfer of the stock and did not intend to be bound by it. On the contrary, it is clear, from the allegations through which they sought relief against the Council for the stock, that it was through the right of the testator to it at the time of his death, and its liability, as his property, to respond to the demands which they hold against him as creditors.

The ninth Section of the complaint above set forth at length repels the assumption of the acceptance of the statement of the executor as true; and the purpose of contesting it is further made manifest in the demand of judgment "that the said city stock standing in the name of the said Joseph Whaley at the time of his death be adjudged to belong to the said estate of the said Joseph Whaley and subject to the payment of the debts of the same, and that proper administration thereof be decreed." So far from considering themselves bound by the statement of the executor, it is distinctly and entirely ignored, and their demand rested on allegations in direct opposition to the conclusion sought to be inferred from it.

It is manifest, too, from the whole scope and effect of the answer, that the real issue as to the stock was the right of ownership in it at the death of the testator, and the course of the parties at the reference, without objection, as to the order of proof, renders plain their understanding of the effect of the proceedings, and on whom was cast the *onus* of proving the right to the stock at the death of the testator, and on whom it *then* devolved to prove that all his title to it, whatever it may have been, was transferred in his lifetime by some adequate act of his own. The respondents proved that at his death there was stock standing on the books of the City Treasurer in his name to the amount of $86,342. The counsel for the city, then, "admitting this amount so standing at the death of Joseph Whaley, offered in evidence the transfer book of the City Treasurer, to show to whom the stock had been transferred." The parties certainly must be supposed to know the relation in which they respectively stand to the issues raised by the pleadings, and the Court would hesitate long before it would draw a conclusion inconsistent with such a presumption.

Even if the City Council is right in its assertion in the argument that the *onus* was on the respondents to establish their right by proof of a negative, to wit, that the stock had never been transferred by the testator, can it avail itself of error in the course allowed on the reference by its own consent and sanction? Can it claim here any exception to the order of proof pursued at the reference, when it was not only without objection on its part, but when, after proof that the stock stood in the name of the testator at his death, it not only admitted the fact but assumed and undertook to show how he became divested of his title?

We must now necessarily consider the question made as to the competency of the transfer book as evidence for the purpose for which it was submitted. How was the transfer book made up? From the certificates themselves, which, according to the proof, are canceled, filed and carefully preserved by the corporation. The primary evidence is thus traced to the party offering the book, and is withheld. The offer of what must be considered secondary evidence, though in writing, if made up by the party tendering it, is obnoxious to the familiar principle that "the highest proof the nature of the thing is capable of must be produced." The record of the transfer cannot be of as high a character as the transfer of the certificate itself, and certainly it acquires no greater force when offered in the interest of the party by whom it is made up and in whose custody it is kept.

It is claimed that the book is evidence to prove all that it purports to contain, because it is a book of a public corporation, and, as such, is competent in favor of the city to show the disposition of stock against one in whom the title is admitted to have once stood. The proposition contended for, to the extent now proposed, cannot be admitted. It is true the books of such a corporation, so far as they relate to its public and general laws,—laws which it is authorized to enact for the purpose of the due execution of the duties and obligations imposed by its charter; laws in furtherance of the design the Legislature had in view when it gave it corporate existence; laws which are necessary to enforce the powers delegated by the Act of its incorporation,—may be proved by their books in due form kept and produced from their proper custody. They may be received in evidence as the record of the exercise of the power of legislation granted to the corporation by its charter. Not so, however, with a book of the nature of the one in question, which in no way partakes of the character of those to which we have just referred.

Even as regards "an entry in a public book of a corporation," Mr. Grant, in his work on Corporations, p. 318, says: "In order to be evidence for the corporation, or for a defendant justifying in right of the corporation, it must be of a public nature; and, therefore, the corporation will not be allowed to make evidence for itself by entries in the public books of facts going to support its title in any case to any claim or demand, even though the entry be made in a formal style and be signed by the corporate officers whose duty it was to make such entries."

In *Rex* vs. *Mathershall*, (Str., 93,) it was held that "corporation books concerning the public government of a city or town, when they have been publicly kept and the entries have been made by a proper officer, are received as evidence of the facts contained in them."

"The books of a corporation *containing their public acts* are very proper evidence, yet some account ought to be given of them,—where kept, &c.—Case of Thetford, 12 Vin. Abr., pl. 16.

In *Marriage* vs. *Lawrence*, (3 B. & Ald., 142,) "an entry in the public books of a corporation is not evidence for them unless it be an entry of a public nature."

It is competent for the Legislature to declare what shall be proof of a title to public stocks. Thus, in the cases of the East India Company, the Bank of England, the South Sea Company, and other like institutions, Parliament has declared by statutes that their books shall be evidence of title to their stock and of its transfer.

A municipal corporation may not exceed the legitimate bounds of its charter by declaring how and in what manner and by what regulations its stock may be transferred. One purchasing stock subject to regulations as to the form of the certificate by which it is to be held and the mode in which it is to be transferred buys with full notice of them; they enter into and become part of the contract, and bind all who are either original holders or claim through a pledge or transfer of it. The City Council of Charleston, exercising this right, has, accordingly, by ordinance, prescribed the form of the certificate of its stock and the mode of its transfer. The ordinance of 16th June, 1852, (under which a portion of this stock was issued to Joseph Whaley,) [City Ordinances published in 1854, p. 127,] after setting forth the form of the certificate, directs the mode in which the transfer shall be made by the holder, viz: "He shall endorse on the back of the certificate the amount to be transferred, the person to whom the transfer is to be made, to which the name of the person transferring it is to be affixed. The City Treasurer, before he issues any new certificate, shall endorse on the back of the certificates the number and amount of the certificate to be issued from the old certificates, and in whose favor; and when such statement shall be signed by the City Treasurer, and countersigned by the Mayor, such certificate shall be deemed canceled, and it shall then be filed for reference and examination in the office of the City Treasurer. The City Treasurer shall make

out new certificates agreeably to the statement endorsed on the old certificate, taking receipts and making entries in the tranfer book in conformity to said receipts and statements. Said new certificates shall be signed by the City Treasurer and countersigned by the Mayor."

The ordinance of 1856, under which other of the stock was issued, prescribes the same formalities as to certificate and transfer.—City Ordinances published in 1859, p. 24; and City Ordinances published in 1854, p. 94. The ordinance of 1866, under which the remainder of the stock was issued, directs "that the certificate shall be in the usual form, and the stock transferred at the Treasurer's office."—C. O. published in 1871, p. 11. The mere entry in the book cannot of itself operate as a transfer of the stock. This, to be effectual, must be in the mode required by the ordinance. In the words of a witness, the clerk of the Treasurer, "the book is a record of transfer of stock in the city office." According to the testimony the original certificates are in the possession of the Council, and if they claim through a transfer they must show that it is in the form prescribed by themselves. The registry of a deed (unless when so permitted by statute) is never received as evidence if the party offering it has control of the original. The Council cannot withhold the primary evidence and resort to that which is only secondary. Although fully satisfied that the result which we have reached is in accordance with the principles by which alone the question made must be determined, still we are impressed with the reasons set forth in the petition of the appellants by their counsel, offered during the argument, asking that the case may be remanded, and the opportunity thus afforded them of submitting the original certificates of the stock, which they aver they hold, in proper form transferred.

The petition, which is attested by the oath of one of their counsel, affirms that the corporation and their counsel were misled by the allegations of the complaint as to the course and character of the proof necessary to maintain their defense. The amount involved is a very large one, and the Referee in his report states that there was no evidence of bad faith submitted in regard to the transaction against the officers of the corporation. This is "a case of chancery," and in regard to one of that character, as was said in *Sullivan* vs. *Thomas*, (3 S. C., 546,) "the jurisdiction and powers of this Court are as full as those of the late Court of Appeals and Court of Errors."

In *Gist* vs. *Gist*, (Bail. Eq., 349,) Chancellor Harper, in delivering the opinion of the Court, says: "In strictness, this claim comes too late. It ought to have been made before the Master on the reference. It was not done, and there was neither any exception to his report on that ground nor was the point made at the hearing in the Court below. Still, however, I suppose it to be within the competency of this Court, if any claim or ground of defense has been casually omitted to be made, to afford the parties an opportunity of trying its merits; and the Court is always reluctant, whilst the case is in its power, to exclude any apparently just claim or defense."

Though the present application is not founded on precisely the same grounds which moved the Court in that case, yet it may be fairly included within the reason which induced its action. The alternative here is between fixing a heavy debt on the city, from which it avers it can free itself by testimony in its possession, and affording them the opportunity of sustaining their allegation. The respondents will have the right of contesting the evidence when offered, and the delay resulting will be short. The ends of justice, in our view, demand the course which we shall direct.

It is, therefore, ordered and adjudged that the case be remanded to the Circuit Court. That on the payment by the said City Council of Charleston of all the costs of the respondents so far accrued the said Court do refer the case to the Referee for the purpose of allowing the said Council to offer evidence of their right to the stock which on the death of Joseph Whaley stood in his name, or to show how he may have been divested of his title thereto, the respondents to be at liberty to offer testimony in rebuttal. If the costs so ordered to be paid are not paid within forty days of demand for the same by the respondent or their attorneys, the motion to be considered dismissed and the decree of the Circuit Court affirmed.

*Wright*, A. J., concurred.

WILLARD, A. J. The action is in the nature of a bill by creditors of Joseph Whaley, deceased, against William Whaley, his executor, alleging the insolvency of the executor. The City Council were made defendants for the purpose of charging them with having transferred, without authority, stock of the said city standing in the name of Joseph Whaley at his death, in part to them-

selves and in part to third persons claiming to own the same. The city answered, alleging "that all of the city stock standing in the name of Joseph Whaley upon the books of the city treasury was by him pledged, as collateral security, for loans made to him, and the same has by the pledgees since his death been transferred upon the books of the City Treasurer; that the Commissioners of the Sinking Fund have purchased a portion of said stock.

A reference was ordered and testimony taken before the Referee, and a report, containing findings of fact and law, made by the Referee, to which exceptions were taken by the City Council. These exceptions were disallowed, and a decree made, among other things, establishing the right of the plaintiffs to the stock standing in the name of Joseph Whaley at his death.

The facts of the case are rendered involved and obscure by the course of proceeding before the Referee. In the natural order of proof, the plaintiff would have offered the transfer book of the City Council in order to prove the amount of stock standing in the name of Joseph Whaley at his death and the fact alleged that such stock had been subsequently transferred to the Commissioners and to third persons; for if the complaint as against the City Council is to be regarded as of the same nature as an action by the owner of stock against a corporation issuing such stock for an unlawful transfer of the same to a stranger, it would be incumbent on the plaintiffs to prove the fact of such illegal transfer, and, for that purpose, the transfer book kept by the corporation would be competent. It appears, however, that this proof was offered by the City Council and objected to by the plaintiffs on the ground that the transfer book was not primary evidence of such transfer. The book was excluded. No further direct testimony was offered by either party of a transfer ever having been made by the City Council, and the Referee accordingly found that no transfer of the stock standing in the name of Joseph Whaley at the time of his death nor any authority to make transfers of said stock had been proved.

This finding still stands in form, and it regulates every averment in the complaint on which the plaintiffs sought to recover against the City Council, except the single averment that they hold certain certificates of stock formerly belonging to Joseph Whaley as the property of the city. The stock here referred to is that purchased for the Commissioners of the Sinking Fund. If this averment is regarded as proved, then the case would stand as follows: Joseph

Whaley had standing in his name stock of the city, the certificates of which are in the possession of the City Council, untransferred, and claimed by them as the property of the city.

The allegation of the answer is to the effect that the stock claimed by the plaintiffs as held by the City Council was purchased of persons to whom the stock was hypothecated by Joseph Whaley.

The report is based on an account sales of city stock purchased for the Commissioners of the Sinking Fund submitted in evidence. It appears by this account sales that the Commissioners of the Sinking Fund had at various times purchased certain certificates of stock standing in the name of Joseph Whaley and certain standing in the name of H. G. Loper. The decree is also based in part, apparently, on the account sales.

The question then arises, do the inferences capable of being drawn from the account sales warrant the report and decree based upon it?

Under the evidence the case stands as follows: The City Council have purchased and hold certain certificates of stock, such purchases being made in the due course of business by a broker. It does not appear in what hands the certificates were at the time of such purchase. It is to be presumed that the persons, whoever they were, who sold through the broker to the Commissioners of the Sinking Fund held the proper certificates showing a *prima facie* right to their possession and to dispose of them, and that such certificates were transferred to the Commissioners of the Sinking Fund, though not transferred on the books of the corporation. From all that appears, the City Council were *bona fide* purchasers for value, and without notice, of certificates in the customary form. The presumptions are clearly with the City Council, and the burden was fairly imposed upon the plaintiff of showing an infirmity in the title resulting from notice or other cause.—*State Bank* vs. *Cox*, 11 Rich. Eq., 344; *McNeil* vs. *Bank*, 46 N. Y., 325; *Bank* vs. *Lanier*, 11 Wall., 369.

Had it been made to appear that the City Council had transferred the stock thus purchased upon the books of the corporation, then the burden would have devolved upon them of showing the authority on which such transfer was made, for in that case the liability would have arisen not as purchasers of certificates but as having made an unauthorized transfer. But this report finds that

the stock never was transferred. The report, after excluding the testimony derived from the books of the city treasury, sets forth the contents of those books evidently for the purpose of showing the nature and effect of the evidence thus excluded. This portion of the report cannot be referred to as affording ground for affirmative conclusions of fact consistently with the ruling excluding the source from which it is derived as incompetent.

The only evidence, then, on which the conclusion of the Referee must be regarded as resting is that afforded by the account sales, which we have already considered as not being sufficient in itself to affect the title of a *bona fide* purchaser for value and without notice of a defect in the certificates of stock.

The evidence would not then support the final conclusion of the Referee that all the stock standing in the name of Joseph Whaley at his death was assets and should be accounted for as such.

The decree, while refusing to set aside the Referee's report, is entirely inconsistent with it. It finds, affirmatively, that the stock standing in the name of Joseph Whaley at his death had been since transferred to the Sinking Fund and to third persons. The decree virtually sets aside the conclusions of the Referee that the transfer of the stock was not proved, and in effect adjudges it proved, and predicates an affirmative judgment on the fact that such transfer had been proved. The proper course in such case was to afford the parties an opportunity to make further proofs.

The hearing before the Referee was defective in consequence of the improper exclusion of the transfer book. When that book was ruled out, counsel for the city were under no obligation to prove authority to transfer if there was no proof of the fact of transfer, and they had a right to expect that an opportunity to introduce other testimony would be afforded should it be made to appear that such error had been committed. It is not to be doubted that the Circuit Court had full authority to set aside the report and sustain the conclusions of the Referee upon a totally different view of the evidence. The question is, whether the case called for the exercise of such powers. It is evident that the case was not in a condition for final judgment. The facts were not developed. Both parties had access to those facts. Any agent of the corporation could have been sworn by either side. The production of any documentary proofs in possession of the City Council important to the case might have been compelled by the plaintiffs. In addition to this,

the amount of the judgment will necessarily be very large—the nominal amount of stock being upwards of $80,000—and will fall upon the citizens. The defect of the proofs was capable of being traced in part to the erroneous ruling of the Referee. It is evident that the proper course was to throw upon counsel the whole responsibility of the recovery of a judgment of such magnitude by affording them the fullest opportunity to supply the defect of testimony. Denying this opportunity, that responsibility would not wholly rest on counsel. As we can see clearly what decree should have been made, it is our duty to make it accordingly.

It is evident that substantial justice has not been done by the circuit decree, and it should be set aside, together with the report, and the case opened for further testimony and proceedings thereon.